# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA EX REL. PETER ROST, <br><br> Plaintiffs, <br><br> -v.- <br><br> PFIZER INC AND PHARMACIA CORPORATION, <br><br> Defendants. | Docket Number: 1:03-CV-11084-PBS <br><br> The Honorable Patti B. Saris |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO STRIKE PLAINTIFFS' STATEMENT OF UNDISPUTED FACTS AND OTHER INADMISSIBLE EVIDENCE**

Ethan M. Posner
Geoffrey E. Hobart (BBO # 547499)
Benjamin J. Razi
Mark W. Mosier
COVINGTON & BURLING LLP
1201 Pennsylvania Ave., NW
Washington, D.C. 20004
(Tel) 202-662-6000
(Fax) 202-662-6291

*Attorneys for Pfizer Inc and Pharmacia Corporation*

# TABLE OF CONTENTS

Page

ARGUMENT ........................................................................................................................... 1

I. Rost Cannot File a Statement of Undisputed Facts. ............................................. 1

II. Rost Improperly Relies on Inadmissible Evidence To Oppose Summary Judgment. ......... 2

    A. The "Claims Chart" Created by Rost's Counsel Is Inadmissible. .......................... 2

    B. Brock's Opinions Are Inadmissible Because They Are Offered in an Unsworn Report and Do Not Satisfy the Requirements for Expert Testimony. ........................ 5

    C. The "V2" Report Has Not Been Authenticated and Contains Inadmissible Hearsay. .......................................................................................................... 8

        1. The "V2" Report Has Not Been Authenticated. ........................................ 9

        2. The "V2" Report Is Littered With Inadmissible Hearsay. ......................... 9

    D. Rost's Own Opinion Testimony Is Inadmissible Because He Is Not Qualified To Opine on Medical Issues. ............................................................... 10

    E. The Drugs.com Printout Contains Inadmissible Hearsay. .................................... 10

CONCLUSION ..................................................................................................................... 11

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Air Safety, Inc. v. Roman Catholic Archbishop of Boston*,
 94 F.3d 1 (1st Cir. 1996) ................................................................................................ 3

*Burkhart v. Wash. Metro. Area Transit Auth.*,
 112 F.3d 1207 (D.C. Cir. 1997) ..................................................................................... 7

*Carmona v. Toledo*,
 215 F.3d 124 (1st Cir. 2000) .......................................................................................... 9

*Daubert v. Merrell Dow Pharms., Inc.*,
 509 U.S. 579 (1993) ....................................................................................................... 5

*Garside v. Osco Drug, Inc.*,
 895 F.2d 46 (1st Cir. 1990) ..................................................................................... 10, 11

*Gorski v. N.H. Dep't of Corrections*,
 290 F.3d 466 (1st Cir. 2002) .......................................................................................... 2

*Levin v. Dalva Bros., Inc.*,
 459 F.3d 68 (1st Cir. 2006) ............................................................................................ 5

*Nieves-Villanueva v. Soto-Rivera*,
 133 F.3d 92 (1st Cir. 1997) ............................................................................................ 7

*Perez v. Volvo Car Corp.*,
 247 F.3d 303 (1st Cir. 2001) .......................................................................................... 1

*Provident Life and Acc. Ins. Co. v. Goel*,
 274 F.3d 984 (5th Cir. 2001) ......................................................................................... 5

*Quinones-Pacheco v. Am. Airlines, Inc.*,
 979 F.2d 1 (1st Cir. 1992) .............................................................................................. 6

*Robinson v. Bodoff*,
 355 F. Supp. 2d 578 (D. Mass. 2005) ............................................................................ 9

*United States v. Drougas*,
 748 F.2d 8 (1st Cir. 1984) .............................................................................................. 3

**STATUTE**

42 U.S.C. § 1370a-7 ................................................................................................................ 8

Page

**RULES**

Civ. L.R. 56.1 ............................................................................................................................. 1

Fed. R. Civ. P. 56 .................................................................................................................. 5, 9

Fed. R. Evid. 701 .................................................................................................................... 10

Fed. R. Evid. 702 ...................................................................................................................... 8

Fed. R. Evid. 1006 ............................................................................................................... 2, 3

Page

**RULES**

Civ. L.R. 56.1 ............................................................................................................................. 1

Fed. R. Civ. P. 56 .................................................................................................................. 5, 9

Fed. R. Evid. 701 .................................................................................................................... 10

Fed. R. Evid. 702 ...................................................................................................................... 8

Fed. R. Evid. 1006 ............................................................................................................... 2, 3

Plaintiff/Relator Peter Rost relies extensively on improper evidence and unsupported assertions in opposing the motion for summary judgment filed by Defendants Pfizer Inc and Pharmacia Corporation. Rost filed his own statement of "Undisputed Facts" even though Local Rule 56.1 does not permit such a statement. Rost also attempts to create factual disputes by relying on a host of inadmissible evidence. Because a party opposing summary judgment must do so based on admissible evidence, the Court should grant Defendants' motion to strike. *See Perez v. Volvo Car Corp.*, 247 F.3d 303, 314 (1st Cir. 2001) (motion to strike is appropriate for challenging improper summary judgment evidence).

## ARGUMENT

### I. ROST CANNOT FILE A STATEMENT OF UNDISPUTED FACTS.

Rost's Local Rule 56.1 Statement has two sections. The first section satisfies Rost's obligation to set forth "the material facts of record as to which it is contended that there exists a genuine issue to be tried." Civ. L.R. 56.1. But his Statement does not end there. Instead, it includes a second section, entitled "Plaintiff's Undisputed Facts," that contains 51 paragraphs and spans over 25 pages. Local Rule 56.1 does not permit a non-moving party to submit its own statement of undisputed facts. Nor is there any reason for a non-moving party to present undisputed facts. To defeat summary judgment, the non-moving party must show that a trial is necessary, and undisputed facts do not help achieve this goal. The Court should therefore strike this section of the statement.[1]

---

[1] Many of Rost's purported "undisputed facts" are disputed, but they are not relevant to resolving Defendants' summary judgment motion. Rost implicitly concedes the irrelevance of these facts by not providing them as part of his Opposition to Defendants' Statement of Undisputed Facts. The Court should strike (rather than simply ignore) Rost's statement of "Undisputed Facts" because Defendants are unfairly prejudiced by including in the record a

(continued…)

## II. ROST IMPROPERLY RELIES ON INADMISSIBLE EVIDENCE TO OPPOSE SUMMARY JUDGMENT.

"In opposing a motion for summary judgment, a plaintiff must proffer <u>admissible</u> evidence that could be accepted by a rational trier of fact as sufficient to establish the necessary proposition." *Gorski v. N.H. Dep't of Corrections*, 290 F.3d 466, 475-76 (1st Cir. 2002) (emphasis added). Rost's opposition relies on at least five pieces of inadmissible evidence: (1) the so-called "Claims Chart" created by Rost's counsel (Labaton Decl. Ex. 49); (2) the Brock report (*id.* Ex. 11); (3) the "V2" report (*id.* Ex. 18); (4) Rost's own opinion testimony (*id.* Ex. 6); and (5) the "drugs.com" printout (*id.* Ex. 43). Because this evidence is inadmissible (not to mention grossly unreliable), the Court should strike it from the summary judgment record.

### A. The "Claims Chart" Created by Rost's Counsel Is Inadmissible.

The primary so-called "evidence" of the alleged false claims at issue in this case is a "Claims Chart" created by Rost's counsel.[2] Rost's counsel asserts that "[t]he Claims Chart represents a summary of the false claims that Dr. Rost is alleging in this action and contains information extracted primarily from Exhibits 46-48 . . . and Defs.' Exhibit 13." (Labaton Decl. ¶ 51.) Although Federal Rule of Evidence 1006 permits summary evidence under certain circumstances, the "Claims Chart" is not admissible under this rule.

The "Claims Chart" is inadmissible because Rost failed to comply with the procedural requirements for admitting evidence under Rule 1006. The First Circuit has held that "a party seeking to use a summary under Rule 1006 must identify its exhibit as such, provide a

---

statement of purportedly undisputed facts with which they disagree but are not entitled to file an opposition.

[2] The "Claims Chart" is actually six different charts (each with a separate tab in the exhibit). Rost never explains whether there is any significance to the way the claims are divided.

2

list or description of the documents supporting the exhibit, and state when and where they may be reviewed." *Air Safety, Inc. v. Roman Catholic Archbishop of Boston*, 94 F.3d 1, 8 (1st Cir. 1996). The party must also provide "unequivocal notice of . . . [its] intent to invoke Rule 1006." *Id.* Here, Rost has utterly failed to provide such notice; indeed, Rost has never mentioned Rule 1006. Moreover, Rost's counsel did not disclose the full set of documents on which the "Claims Chart" is based. Although he identified the exhibits on which the "Claims Chart" was "<u>primarily</u>" based (Labaton Decl. ¶ 51 (emphasis added)), the other sources remain a mystery. Needless to say, Rost has not allowed Defendants to review the unidentified sources on which he relies.

In addition to these procedural failings, the "Claims Chart" is also inadmissible based on its substance. The First Circuit has explained that "[c]harts and summaries are . . . inadmissible if they contain information not present in the original or duplicate materials on which they are based." *United States v. Drougas*, 748 F.2d 8, 25 (1st Cir. 1984). Consequently, "[c]are must be taken to insure that summaries accurately reflect the contents of the underlying documents and do not function as pedagogical devices that unfairly emphasize part of the proponent's proof or create the impression that disputed facts have been conclusively established or that inferences have been directly proved." *Id.* The "Claims Chart" fails because it contains information not in the record and it does not accurately summarize the evidence.

The most basic failing of the "Claims Chart" is that it is intended to establish the existence of false claims, but it does not provide the most basic claims information—who submitted the claim and who paid it. Rost concedes that pharmacies submitted the claims (Relator's Mem. in Opp'n to Defs.' Mot. Summ. J. ("Rost Mem.") at 8), but they do not appear

3

anywhere in the chart. Rost asserts that false claims were paid by Indiana and Kentucky Medicaid, but the chart does not identify which agency paid for which claims.

The "Claims Chart" is also inadmissible because it purports to show that certain patients were prescribed Genotropin for ISS even though there is no evidence to support these after-the-fact "diagnoses" by Rost's lawyers. Nothing in Defendants' Exhibit 13 or Plaintiffs' Exhibits 46-48—the exhibits on which Rost's counsel "primarily" relied in creating the chart—links the patients listed in the "Claims Chart" to either an ICD-9 code or a diagnosis. As a result, there is no evidentiary support for the Claims Chart's "Diagnosis" column.[3]

Moreover, the "Claims Chart" is inadmissible because it lists patients for whom there is no evidence that Indiana or Kentucky Medicaid paid claims on their behalf. Indiana Medicaid produced a single spreadsheet of claims paid for Genotropin. (ROST01568 [Mosier Decl. Ex. 13].) This spreadsheet lists 17 patients—none of whom have the initials "A.D.," "G.S.," or "J.V." Rost nonetheless asserts that Indiana physicians prescribed Genotropin to patients with these initials and that the claims were false.

Finally, the information provided for many claims in the "Claims Chart" is so incomplete that this purported "evidence" cannot establish a false claim. For example, many of the claims in "Tab 3" of the chart do not even identify a patient or a diagnosis. Rost has never

---

[3] For a number of patients, the "Diagnosis" column states "783.43 Growth Failure/ISS." There is no evidence to support Rost's association of the "783.43" ICD-9 code with "ISS." To the contrary, undisputed evidence establishes that "783.43" simply denotes "short stature" and therefore is appropriate for patients whose short stature results from a wide range of causes. Moreover, treatment for many of these causes of short stature are approved, on-label indications for Genotropin. In their Statement of Undisputed Facts, Defendants cite testimony from two physicians who explain this basic point about the "783.43" code. (Defs.' Statement of Undisputed Facts ("Defs.' SUF") ¶ 26.) Rost purports to dispute the fact, but in opposition he cites only a blank Statement of Medical Necessity form which does nothing to call this fact into question. (Pl.'s Opp'n to Defs.' SUF ¶ 26.)

4

advanced a legal theory—nor is there such a theory—under which he can prove a False Claims Act violation without establishing the identity of the patient and his or her diagnosis.

For these reasons, the Court should strike the "Claims Chart" as inadmissible.

**B.     Brock's Opinions Are Inadmissible Because They Are Offered in an Unsworn Report and Do Not Satisfy the Requirements for Expert Testimony.**

In opposing Defendants' motion for summary judgment, Rost relies heavily on the expert report of Professor Dan W. Brock. (*See, e.g.*, Pl.'s Opp'n to Defs.' SUF ¶¶ 12, 59-61, 67-69, 70; Pl.'s Undisputed Facts ("Pl.'s SUF") ¶¶ 4-10, 19, 27, 50.) This report is inadmissible because it is unsigned and unsworn. *See, e.g., Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 1000 (5th Cir. 2001) ("Unsworn expert reports . . . do not qualify as affidavits or otherwise admissible evidence for [the] purpose of Rule 56, and may be disregarded by the court when ruling on a motion for summary judgment." (quotations and citations omitted; alterations in original)).[4]

Even if it were sworn, much of Professor Brock's report would still be inadmissible.

1. Brock's opinion's concerning the "fair market value" of compensation for data entry into the KIGS database should be excluded because the opinion is beyond his expertise. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993); *Levin v. Dalva Bros., Inc.*, 459 F.3d 68, 78 (1st Cir. 2006) ("[A] district court acts properly by excluding opinions that are

---

[4]     Excluding an expert report because it is unsworn is particularly important where, as here, the deficiency cannot be easily remedied. During his deposition, Professor Brock disavowed some of the opinions in his unsworn report. For example, despite the report's opinions on causation, Brock admitted that he could not establish that the Bridge or KIGS programs caused any particular prescriptions to be written. (Defs.' SUF ¶¶ 82-83.) As a result, Professor Brock would need to revise his report before he could swear to its contents.

5

beyond the witness's expertise."). Brock conceded that, as an ethicist, he was not "in a position to opine about the fair market value" of particular services performed by pediatric endocrinologists. (Brock Dep. 88:17-89:12 [Mosier Decl. Ex. 1].)

Brock's opinion on the "fair market value" of compensation for data entry into the KIGS database should also be excluded because it is based on an assumption not supported by the record. *See Quinones-Pacheco v. Am. Airlines, Inc.*, 979 F.2d 1, 6 (1st Cir. 1992) ("Because [the expert's] analysis was predicated on an assumption not supported by the record . . . the district court did not err in excluding the proffer."). Brock opines that the $100 payment for initial data entry is acceptable because it takes approximately 30 minutes to enter this data. (Brock Dep. 86:10-87:8 [Mosier Decl. Ex. 1].) However, he contends that the $100 payment for subsequent visits is improper. Brock bases this view on the assumption that the data could be entered in only a few minutes. (*Id.* at 91:7-9.) The record does not support this assumption. The only evidence in the record about the time needed to enter data for subsequent visits comes from Dr. Clark, who testified that data entry for both initial and subsequent visits took approximately 30 minutes. (Clark Dep. 150:14-21 [Mosier Decl. Ex. 3].)[5]

2. The causation opinions in Brock's report should be excluded. In his unsworn report, Brock asserts that "Pharmacia's off-label promotion practices caused the submission of false claims to the federal government." (Brock Rep. at 12-15 [Labaton Decl. Ex. 11]). During his deposition, Brock conceded that he had no support for this assertion. Indeed, he testified that

---

[5] Brock's assumption that subsequent data entries took only a few minutes appears to be based on testimony that physicians were "required" to enter only five pieces of data for the entry to qualify for compensation. But there is no evidence that physicians entered only the bare minimum. The KIGS protocol instructs physicians to provide significantly more information. (KIGS Protocol § 6.1.3 [Mosier Decl. Ex. 4].)

6

he could not identify a single claim that was caused by Defendants' practices. (*See* Defs.' SUF ¶¶ 82, 83.) Rost concedes that Brock could not establish causation for any claims (Pl.'s Opp'n to Defs.' SUF ¶¶ 82-83), and he appears to concede the inadmissibility of the report's causation opinions because does not cite these opinions in his opposition to Defendants' motion for summary judgment.

        3. Brock's legal opinions should be excluded. Throughout the unsworn report, Brock repeatedly opines that Defendants have violated the Anti-Kickback Statute and that they have caused false claims to be submitted to Medicaid agencies. (*See, e.g.,* Brock Rep. at 2 [Labaton Decl. Ex. 11] ("What practices by Pharmacia in the sales and marketing of Genotropin violated the prohibitions in the anti kickback statute? I shall detail several, each of which I believe are properly understood as kickbacks under the terms of the statute.").) Brock's legal opinions are inadmissible both because he concedes that he is not a legal expert (or even a lawyer) (Brock Dep. 53:22-54:2 [Mosier Decl. Ex. 1]), and because "purely legal questions and instructions to the jury on the law to be applied to the resolution of the dispute before them is exclusively the domain of the judge," *Nieves-Villanueva v. Soto-Rivera*, 133 F.3d 92, 99 (1st Cir. 1997) (internal quotations and citation omitted); *see also Burkhart v. Wash. Metro. Area Transit Auth.*, 112 F.3d 1207, 1213 (D.C. Cir. 1997) ("Each courtroom comes equipped with a 'legal expert,' called a judge, and it is his or her province alone to instruct the jury on the relevant legal standards.").

        4. Brock's ethical opinions concerning "kickbacks" and "false claims" should be excluded. During his deposition, Brock explained that his opinions concerning "kickbacks" and "false claims" were based on his expertise as an ethicist. According to Brock, the terms "kickbacks" and "false claims" are also used by ethicists and his report should be interpreted as

7

opining on these topics as a matter of ethics. (Brock Dep. 16:24-19:16; 46:22-47:11 [Mosier Decl. Ex. 1].) This testimony is contradicted by statements in his unsworn report. (Brock Rep. at 2 [Labaton Decl. Ex. 11] ("For purposes of this report, I shall understand a 'kickback' as defined and prohibited in 42 U.S.C. 1370a-7(b), the Anti Kickback statute.").) In any event, Brock's testimony that, as an ethical matter, Defendants provided "kickbacks" that resulted in the submission of "false claims" should be excluded because it fails to satisfy the most basic requirement for expert testimony—that it "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Rost has offered no theory under which he can recover based on purported unethical conduct; he must establish a <u>legal</u> violation of the Anti-Kickback Statute and False Claims Act. Permitting an ethicist to opine that Defendants provided "kickbacks" as an ethical matter would only confuse a jury asked to decide whether Defendants provided "kickbacks" as a legal matter.

> C. **The "V2" Report Has Not Been Authenticated and Contains Inadmissible Hearsay.**

Rost relies on a report drafted by something called "V2," but the record contains no evidence of what "V2" is or who at "V2" prepared the report. According to the report, "V2" conducted 79 telephone interviews with pediatric endocrinologists, endocrinology nurses, patients, and parents. The report contains both purported direct quotations from the anonymous physicians, nurses, parents, and patients, as well as the unnamed author's own impressions drawn from his or her conversations with the anonymous sources. Rost repeatedly relies on

these statements to establish the supposed truth of matters asserted in the report. (*See, e.g.,* Pl.'s Opp'n to Defs.' SUF ¶¶ 59-61, 67-69, 70, 80.)[6]

### 1. The "V2" Report Has Not Been Authenticated.

The Court should strike the "V2" report because it has not been authenticated. *See Carmona v. Toledo*, 215 F.3d 124, 131 (1st Cir. 2000) ("To be admissible at the summary judgment stage, documents must be authenticated and attached to an affidavit that meets the requirements of Rule 56(e)." (internal quotation and citation omitted)). In his declaration, Rost's counsel states that the report is "a true and correct copy of Exhibit 10 to the deposition of Daniel Meyers." (Labaton Decl. ¶ 20.) This statement does not authenticate the report, *see Robinson v. Bodoff*, 355 F. Supp. 2d 578, 582 (D. Mass. 2005), and Meyers did not authenticate the report because he did not know who prepared it. (Meyers Dep. 124:12-125:25 [Mosier Decl. Ex. 2].)

### 2. The "V2" Report Is Littered With Inadmissible Hearsay.

The Court should also strike the "V2" report because it contains inadmissible hearsay. Rost repeatedly cites the report for the truth of the matters asserted therein despite the fact that it contains multiple layers of hearsay. For example, Rost attempts to dispute the fact that the KIGS program provided substantial benefits to physicians with a statement by the report's (unnamed) author summarizing statements made by (anonymous) physicians: "Most [endocrinologists] report that they use the research databases infrequently ranging from once every 6 months to once every 2 years (if ever)." (Pl.'s Opp'n to Defs.' SUF ¶ 59.)[7] Because the

---

[6] Rost has not claimed than an exception to the hearsay rule applies. Nor is there any evidence to suggest that the report qualifies as a business record or falls within any other hearsay exception.

[7] The other statements on which Rost's relies (*see, e.g.,* Pl.'s Opp'n to Defs.' SUF ¶¶ 59-61, 67-69, 70, 80) are hearsay for the same reason.

report's contents are out-of-court statements offered for the truth of the matter asserted, they are inadmissible hearsay and therefore cannot be used to oppose summary judgment. *See Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir. 1990) ("Hearsay evidence, inadmissible at trial, cannot be considered on a motion for summary judgment.").

> **D. Rost's Own Opinion Testimony Is Inadmissible Because He Is Not Qualified To Opine on Medical Issues.**

During his deposition, Rost opined that a diagnosis of growth hormone deficiency is proper only if it is supported by two stimulation tests. (Rost Dep. 80:2-14 [Labaton Decl. Ex. 6].) Rost's testimony is not admissible as a lay opinion because it is not "based on the perception of the witness" and because an opinion on the proper method for diagnosing a particular illness requires "scientific, technical, or other specialized knowledge." Fed. R. Evid. 701. The testimony is not admissible as expert testimony because Rost admitted that his view is not based on any medical expertise, but rather on his "lay understanding . . . as a marketing executive." (Rost Dep. 80:15-18 [Labaton Decl. Ex. 6].)[8]

Because Rost's opinion testimony is inadmissible, the Court should strike those portions of his summary judgment opposition (including Pl.'s Opp'n to Defs.' SUF ¶ 43 and Pl.'s SUF ¶¶ 24, 26, 40, and 42), that rely on this testimony.

> **E. The Drugs.com Printout Contains Inadmissible Hearsay.**

Rost offers a printout from the "drugs.com" website as evidence that Genotropin has certain side effects. (*See* Labaton Decl. Ex. 43; Pl.'s SUF ¶ 16). This information is an out-of-court statement offered to prove the truth of the matter asserted (Genotropin's side effects)

---

[8] Moreover, Rost should not be permitted to serve as his own expert in this case because he did not file an expert report as required by the Court's scheduling order or otherwise disclose to Defendants that he intended to provide expert testimony.

and Rost has not established that a hearsay exception applies. The Court should therefore strike the "drugs.com" printout (Labaton Decl. Ex. 43) as inadmissible hearsay. *See Garside*, 895 F.2d at 50.

## **CONCLUSION**

For the foregoing reasons, Defendants' motion to strike should be granted.

Respectfully submitted,

  /s/ Ethan M. Posner
Ethan M. Posner
Geoffrey E. Hobart (BBO # 547499)
Benjamin J. Razi
Mark W. Mosier
COVINGTON & BURLING LLP
1201 Pennsylvania Ave., NW
Washington, D.C. 20004
(Tel) 202-662-6000

December 15, 2009            *Attorneys for Pfizer Inc and Pharmacia Corporation*